UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARION E. WARD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL,<br><br>　　　　　Defendant. | CIVIL ACTION NO. 3:20-CV-00641<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

　　　　Plaintiff Marion E. Ward brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 11). For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

　　I.　**BACKGROUND AND PROCEDURAL HISTORY**

　　　　Ward is an adult individual born November 19, 1965, who was 47 years old at the time of her alleged onset date of disability: January 1, 2013. (Doc. 13-2, at 18, 26). Ward's age at the onset date makes her a "younger person" under the Social Security Act. 20 C.F.R. § 404.1563(c). Ward completed her GED in 1984 and has no specialized vocational training. (Doc. 13-6, at 7). Prior to her alleged onset date, Ward served as a fast food manager. (Doc. 13-2, at 48).

　　　　On January 11, 2017, Ward protectively filed an application for disability insurance

benefits pursuant to Title II of the Social Security Act. (Doc. 13-2, at 16). In her application, Ward alleged that she became disabled beginning January 1, 2013, as a result of Lyme disease, degenerative disc disease, spondylosis, occipital neuralgia, arthritis in the spine and hips, HLA-B27 Gene, depression, chronic pain, bulging discs, and bone spurs. (Doc. 13-6, at 6). The Social Security Administration initially denied the application on April 6, 2017, prompting Ward's request for a hearing, which Administrative Law Judge (ALJ) Paula Garrety held on October 17, 2018. (Doc. 13-2, at 16, 33). In a written decision dated December 18, 2018, the ALJ determined that Ward was not disabled and therefore not entitled to benefits under Title II. (Doc. 13-2, at 16-28). The Appeals Council denied Ward's request for review. (Doc. 13-2, at 2).

On April 20, 2020, Ward filed the instant action. (Doc. 1). The Commissioner responded on September 21, 2020, providing the requisite transcripts from Ward's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, (Doc. 14; Doc. 15; Doc. 16), with Ward alleging three bases for reversal or remand. (Doc. 14, at 6).

**II.    STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers

in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, 798 F. App'x 734, 736 (3d Cir. 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Ward is disabled, but whether the Commissioner's determination that Ward is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.   THE ALJ'S DECISION

In her written decision, the ALJ determined that "[Ward] was not under a disability, as defined in the Social Security Act, at any time from January 1, 2013, the alleged onset date,

through December 31, 2016, the date last insured." (Doc. 13-2, at 28). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

    A.  STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Ward] did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2013, through her date last insured of December 31, 2016." (Doc. 13-2, at 18). Ward worked after the alleged onset date, but this work activity did not rise to the level of substantial gainful activity. (Doc. 13-2, at 18).

    B.  STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of

impairments, the ALJ considers step three. Here, the ALJ found that Ward had seven medically determinable impairments – lumbar and cervical degenerative disc disease, status post cervical spine surgery, occipital neuralgia, left elbow epicondylitis, status post left elbow surgery, arthritis, and fibromyalgia. (Doc. 13-2, at 18).

    C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ found that Ward did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Doc. 13-2, at 20). In making this determination, the ALJ reviewed the listings addressing impairments of the musculoskeletal system and neurological impairments. (Doc. 13-2, at 20).

    D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Here, Ward alleged that her medical impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (Doc. 13-6, at 34). Ward further alleged that her medical impairments affected her ability to see, retain information, complete tasks, concentrate, comprehend, follow instructions, and use her hands. (Doc. 13-

6, at 34). The ALJ found that while Ward's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Ward's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 22). The ALJ then went on to detail the record evidence.

After weighing and considering the evidence, the ALJ determined that, "through the date last insured, "[Ward] had the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)" with the following additional limitations:

> [Ward] could not perform climbing. [Ward] could perform no more than occasional postural changes. [Ward] could have no exposure to heights or hazards. [Ward] would need to occasionally alternate positions. [Ward] could perform work that did not require more than frequent use of the bilaterally upper extremities with no overhead lifting or reaching. [Ward] could have no exposure to extremes of cold, heat, or wet, or humid conditions.

(Doc. 13-2, at 21).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his past relevant work despite his limitations, [s]he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on testimony adduced from a vocational expert at Ward's administrative hearing, the ALJ determined that

Ward was unable to perform her past relevant work as a fast food manager. (Doc. 13-2, at 25).

F. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Ward's age (51 years old on the date last insured and a "person closely approaching advanced age" during the relevant period), education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Ward could have performed. (Doc. 13-2, at 26-27). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Ward could have performed the requirements of representative occupations such as a cashier, collator, and photocopy machine operator. (Doc. 13-2, at 26-27).

Given the foregoing analysis, the ALJ determined that Ward was not disabled and therefore denied her application for benefits. (Doc. 13-2, at 16-28).

IV. DISCUSSION

On appeal, Ward challenges the ALJ's decision on three bases: (1) the ALJ's RFC assessment is not supported by substantial evidence because the record is devoid of any opinion concerning Ward's mental functional limitations; (2) the ALJ erred in failing to order a consultative examination or medical expert and failed to fully develop the record with regard to her mental impairments; and (3) the ALJ erred in failing to order a consultative examination or medical expert and failed to fully develop the record with regard to her

physical impairments. (Doc. 14, at 6). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 12, at 3; Doc. 15).

For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

> A. THE ALJ DID NOT ERR IN CONCLUDING WARD WAS CAPABLE OF PERFORMING WORK WITH NO MENTAL LIMITATIONS.

Ward's first challenge to the ALJ's decision is that there is no substantial evidence in the record which would support the ALJ's RFC as to Ward's mental functional limitations. (Doc. 14, at 6). Without a medical opinion to rely on, the ALJ cannot craft an RFC based on substantial evidence, according to Ward. (Doc. 14, at 6). Ward submits that the ALJ was correct in rejecting the only medical opinion of record, but that because the ALJ did not request an updated medical opinion from a consultative examiner or from a medical expert, she must have improperly relied upon her own lay interpretation of the evidence. (Doc. 14, at 7-10).

In response, the Commissioner argues that the "regulations empower the ALJ, not a treating or other physician, based on all of the evidence of record, to make the determination of a claimant's RFC." (Doc. 15, at 8). The Commissioner asserts that the ALJ considered all of the record evidence and properly assessed Ward's limitations pursuant to the governing law and regulations. (Doc. 15, at 9). The lack of mental limitations is supported by the level of treatment, as well as Ward's testimony. (Doc. 15, at 10).

Of utmost importance in this case is the law that it is the claimant's burden of proof to establish disability at steps one through four. *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). As such, Ward bears the burden of proving that her impairments preclude her

from performing light exertion work at an SGA level. *See Hess*, 931 F.3d at 201. Once the claimant presents such evidence, then it becomes the ALJ's responsibility to either identify substantial evidence contradicting that limitation or otherwise conclude that the claimant is limited as averred. *See* 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."). It is only after the claimant has presented evidence of a certain level of disability that the ALJ must explain which medical opinion she or he relies on in determining a higher-functioning RFC than the claimant's evidence supports. *See Goodman v. Berryhill*, 2018 WL 4102860, at *9-10 (M.D. Pa. 2018).

In *Goodman*, the claimant presented substantial evidence of disability. After a consultative examination, a doctor "noted that Goodman had a noticeably difficult time getting up from his seat; walked slowly due to his back pain; and had a limited range of motion in his bilateral lower extremities due to pain." *Goodman*, 2018 WL 4102860, at *2. Additionally, his treating physician opined that he was capable of sitting four to six hours; standing or walking one hour; could occasionally lift up to ten pounds; rarely lift up to twenty pounds; occasionally push, pull, and reach in all directions; and frequently handle, finger, and feel. *Goodman*, 2018 WL 4102860, at *3. Moreover, a state agency reviewing psychologist opined on specific limitations as to his social functioning. *Goodman*, 2018 WL 4102860, at *3.

In reaching his RFC determination, the ALJ did not assign "great" or "significant" weight to any medical opinion. *Goodman*, 2018 WL 4102860, at *8. "Indeed, the ALJ afforded 'little weight' to the opinion of Dr. Hartmann, the only physician who authored an opinion regarding Goodman's physical impairments." *Goodman*, 2018 WL 4102860, at *8. In this context, the ALJ must communicate which medical opinion he or she relies on in fashioning an RFC which is not aligned with an opinion on record. *Goodman*,

2018 WL 4102860, at *10. However, this holding is predicated on there being medical opinion evidence on record. *See Goodman*, 2018 WL 4102860, at *9 ("Moreover, *Cummings* presented a scenario where no medical opinion evidence regarding the Claimant's physical impairments existed in the record. Thus, the Court is not persuaded by the application of *Cummings* and *Chandler* here.") (internal citation omitted).

In *Cummings v. Colvin*, 129 F. Supp. 3d 209 (W.D. Pa. 2015), the plaintiff "takes issue with the ALJ's RFC finding, arguing that it is not supported by substantial evidence because there was no medical opinion in the record regarding Plaintiff's physical impairments." *Cummings*, 129 F. Supp. 3d at 214. The record contained no medical opinion as to the claimant's physical impairments. *Cummings*, 129 F. Supp. 3d at 214. The Court explained that the RFC assessment "must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and descriptions of his own limitations." *Cummings*, 129 F. Supp. 3d at 217 (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)). When there is no medical opinion evidence in the record, the ALJ is not required to support the RFC with a medical source opinion. *Cummings*, 129 F. Supp. 3d at 217; *Goodman*, 2018 WL 4102860, at *9.

Here, like in *Cummings,* there is no medical opinion evidence in the record which would support a more limited RFC. Ward admits that the only medical opinion of record which addresses her mental impairments and limitations is that of Dr. Murphy, who concluded that Ward does not have a medically determinable impairment. (Doc. 14, at

7). Ward provides no record evidence that she requires mental limitations.[2] (Doc. 14, at 6-11). The ALJ, having not been presented evidence that Ward was unable to perform work without mental limitations, was not precluded from concluding that she could perform such work. *See Hess*, 931 F.3d at 201. For this reason, the Commissioner's decision shall not be vacated on this ground.

    B. THE ALJ WAS NOT OBLIGATED TO FURTHER DEVELOP THE MEDICAL EVIDENCE OF RECORD.

Ward next asserts that the ALJ failed in her duty to develop a full and fair record. (Doc. 14, at 11-13). She avers that she established some medically determinable mental impairments and that the ALJ erred in failing to obtain medical opinion evidence to gauge the severity of these impairments. (Doc. 14, at 12). Absent a medical opinion, the ALJ was left to speculate. (Doc. 14, at 12). According to Ward, a psychologist or physician was required before the ALJ could deem the mental impairments non-severe. (Doc. 14, at 12).

In addition, Ward states that her physical impairments and limitations were greater than those considered by the state agency reviewer when he issued his opinion. (Doc. 14, at 13-14). According to Ward, the ALJ acknowledged that the evidence he received at Ward's hearing "suggested that additional limitations were substantiated by the evidence" due to subsequent deterioration. (Doc. 14, at 13-14). When such deterioration occurs after the state agency reviewer issues his opinion, the lack of additional opinion pertaining to that

---

[2] Though the ALJ acknowledged that Lyme disease and depression are medically determinable impairments, he concluded that "the record does not establish that these impairments have more than a minimal effect on the claimant's ability to perform basic work activities during the relevant period." (Doc. 13-2, at 19). Ward submits no evidence to dispute this conclusion. (Doc. 14, at 6-11).

deterioration means that the ALJ's conclusion is speculative. (Doc. 14, at 14). A more recent medical opinion should be ordered for the record to be fully developed, according to Ward. (Doc. 14, at 15).

The Commissioner submits that "the evidence of record is sufficient to assess Plaintiff's limitations." (Doc. 15, at 10). Ward did not testify to any functional limitations arising from depression at her hearing. (Doc. 15, at 10). In addition, the record evinces a lack of mental health treatment and "overall normal findings" with regard to Ward's mental health. (Doc. 15, at 12). As for her physical limitations, the Commissioner states that the ALJ considered all of the record evidence, while giving Ward the benefit of the doubt with regard to the state agency reviewer's opinion. (Doc. 15, at 15-16). The record was complete, so there was no reason for the ALJ to seek additional evidence. (Doc. 15, at 16). As such, the Commissioner asserts that a consultative examination was not necessary. (Doc. 15, at 12).

When making an RFC determination, the ALJ is obligated to develop the record fully and fairly. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This obligation may entail a consultative examination requirement. 20 C.F.R. § 404.1519(a)(b)(4). Such examinations are "require[d]" when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, ... or [t]here is an indication of a change in [the claimant's] condition that is likely to affect [his or her] ability to work, but the current severity of [the] impairment is not established. 20 C.F.R. § 404.1519(a)(b)(4)-(5). If the claimant does not establish "that such an examination is necessary to enable the ALJ to make the disability decision," then the procurement of a consultative examination is left to the discretion of the ALJ. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).

When ... an ALJ fashions a residual functional capacity determination on a

> sparse factual record in the absence of any competent medical opinion evidence which indicates that the claimant is disabled, reviewing courts should adopt a pragmatic view and sustain the ALJ's exercise of independent judgment if that decision is properly based upon all of the facts and evidence.

*Woodman v. Berryhill*, 2018 WL 1056401, at *5 (M.D. Pa. 2018).

Here, Ward does not show that a consultative examination was necessary for the ALJ to reach a disability decision as to her mental capabilities. *See Thompson*, 45 F. App'x at 149. When the evidence is considered as a whole, no conflicts are revealed and the evidence is sufficient; it consistently shows that Ward was not more than minimally effected by Lyme disease and depression. As articulated by the ALJ, "the record does not show significant treatment or symptomatology within the relevant period" for Lyme disease. (Doc. 13-2, at 19). Ward does not identify significant treatment or symptomology in support of her position. (Doc. 14, at 11-13). As for depression, the ALJ justified her decision by citing (1) the lack of treatment from a mental health professional, (2) the condition's stability, (3) clinical findings establishing that Ward was alert and oriented and that her judgment and affect were grossly intact, and (4) Ward's lack of testimony as to any mental health symptoms or limitations at her hearing. (Doc. 13-2, at 19). These findings constitute sufficient evidence to support the ALJ's conclusion that "[Ward's] medically determinable mental impairment caused no more than 'mild' limitation in any of the functional areas, [thus] it was nonsevere." (Doc. 13-2, at 19). Ward does not identify conflicting evidence in her brief in support, therefore no conflict is established. (Doc. 14, at 11-13).

The evidence relied on by the ALJ is sufficient to warrant a finding that Ward's mental limitations were not severe. Under the deferential standard of review this Court undertakes, substantial evidence supports the ALJ's evaluation. As such, no consultative evaluation was

required and the ALJ's decision shall not be vacated on this ground.

No further evidence was required to establish Ward's RFC with regard to her physical limitations either. Ward is concerned that the ALJ did not consider a deterioration of her condition after the state agency reviewer issued his opinion. (Doc. 14, at 14). However, the state agency reviewer issued his opinion on April 3, 2017, over three months *after* Ward's date last insured. (Doc. 13-2, at 18; Doc. 13-3, at 10). Therefore, any deterioration in condition after the state agency reviewer issued his opinion would be irrelevant to the time period at issue. The ALJ supported his RFC with substantial evidence from the record by considering the state agency reviewer's opinion along with evidence received at the hearing level, objective record evidence, and the combined effects of Ward's multiple impairments. (Doc. 13-2, at 22-25).

### V. CONCLUSION

Based on the foregoing, the Court will **AFFIRM** the Commissioner's decision, direct that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Ward, and direct the Clerk of Court to **CLOSE** this case.

An appropriate Order will follow.

Dated: March 25, 2021              *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **Chief United States Magistrate Judge**